# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1998

FILED

January 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9711-CR-00496 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | KNOX COUNTY |
| VS. | ) | |
| | ) | HON. RICHARD R. BAUMGARTNER |
| YASMOND FENDERSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Second Degree Murder, Conspiracy) |

## ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF KNOX COUNTY

FOR THE APPELLANT:

DONALD A. BOSCH
BEVERLEY S. CORNETT
2000 First Tennessee Plaza
Knoxville, TN 37929

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

RANDALL E. NICHOLS
District Attorney General

FRED BRIGHT
Assistant District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# **OPINION**

The Defendant, Yasmond Fenderson, pursuant to Tennessee Rule of Appellate Procedure 3(b), appeals as of right from his convictions for second degree murder and conspiracy to commit second degree murder. The sole issue for review is the sufficiency of the evidence. We affirm the verdicts of the jury as approved by the trial court.

The facts of this case pertain to a killing committed during an attempt by Defendant to recover a package of drugs from the victim, Major Kindell. The victim's wife, Linda Kindell, testified at trial as the State's only eyewitness to the events preceding the killing. According to Kindell, on the evening of October 16, 1993, she asked her husband to go to the grocery store to buy her a package of cigarettes. While he was gone, she heard a knock at the door. She answered the knock but did not open the door, and the person outside asked for the victim. Kindell told the visitor that her husband would be back shortly.

Soon after the victim returned home from the store, the couple heard another knock at the door. The victim answered the door while Kindell remained upstairs. Kindell became curious because of the late hour, and she called down to ask the victim who had come in. The victim instructed her to remain upstairs, but Kindell grew concerned. She walked to the stairs and saw at least four men, possibly five, talking to her husband.

Kindell proceeded downstairs to determine why the men were in her home, and she heard her husband say, "Man, I didn't take your stuff." One member of the group, whom Kindell called the "commander," or the "talker," told her, "I had to drop something because it got hot, and your husband was behind me." Kindell testified that she named this perpetrator the "commander" "[b]ecause he did all the talking [and] he was the only one that was asking questions. No one else asked any questions but him." This man, later identified by Kindell as Defendant, stood approximately three or four feet away from her.

According to Kindell, Defendant then told the victim he wanted to search the apartment and stated that he wanted to begin upstairs. As the victim moved upstairs with Defendant and two other men, Kindell followed and observed a gun in the hand of the man in front of her. The fourth man followed Kindell. Although the victim did not want the men to search, Kindell persuaded him to permit it. She testified, "I said, 'Well, Major, let him search. I want them to get out of my house. Let them look for anything. They've got guns. Let them look anywhere they want to look.'"

Defendant claimed in his statement to police that he ultimately found the item for which he searched: When asked whether he "got what [he] went there to get, Defendant responded, "Yeah. I got what I got in." However, Kindell testified that just before the killing, Defendant said to the victim, "If you didn't get the dope, you do know who got it." Then, stated Kindell, Defendant "looked at Major and he turned around and looked at me. He said, 'Pop go [sic] this weasel!'" When Defendant made this statement, the man with the rifle asked Defendant, "Do you want me to take him out?" Although Kindell "can't remember

what Defendant said or whether [he] said anything right then," she observed Defendant walk out of the room past the gunman. The gunman then raised the gun and Kindell jumped into the bedroom closet screaming. From the closet she heard two or three shots fired.

Kindell, afraid that the perpetrators remained in the house, refused to come out of the bedroom closet at her husband's first request to do so. The victim again asked her to come out and help him, and Kindell then complied. She saw two puncture wounds on the left side of the victim's chest; then she began screaming, ran downstairs, and sat in a chair. A neighbor entered the home through the still-open front door and went upstairs to attend to the victim; and shortly thereafter an ambulance arrived. The victim was treated at the University of Tennessee Hospital in Knoxville until his death sixteen days later on November 2, 1993.

Upon cross-examination, Kindell admitted that she identified someone other than Defendant from a photograph array on the day prior to trial. However, the jury also heard testimony that Kindell had not slept on the night prior to trial because she had been traveling from West Tennessee to Knoxville. Furthermore, she identified Defendant in a photograph array both on November 3, 1993 and also later on the day prior to trial. At trial, Defendant did not dispute his presence in the victim's home the night of the crime; he disputes Kindell's characterization of his role as the leader in the offense.

The State introduced Defendant's taped statement to police through Knoxville Police Investigator Stan McCroskey. In the statement as transcribed,

Defendant denied (1) that he knew the gunman was armed, (2) that he ordered the victim's killing, and (3) that he knew why the gunman shot the victim.

In this appeal, Defendant contends that the evidence is insufficient to support convictions for second degree murder and conspiracy to commit second degree murder. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

Second degree murder is a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). The legislature has defined "knowing" as referring to "a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-302(b). In addition, "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id.

It is undisputed that Defendant did not kill the victim; the jury convicted him based upon his criminal responsibility for the conduct of another. Under the appropriate section of our criminal responsibility statute, the State must prove that, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [Defendant] solicit[ed], direct[ed], aid[ed], or attempt[ed] to aid another person to commit the offense." Id. § 39-11-402(2).

We conclude that the State presented sufficient evidence to permit a jury to find Defendant criminally responsible for second degree murder. The victim's wife, Linda Kindell, testified that Defendant acted as the leader of the group of men by being the only person to demand return of his drugs. Defendant decided that the group would move upstairs and search for the missing drugs, and he ordered Kindell to sit down in the bedroom. In addition, he asserted ownership of the package of drugs by telling police that he found what he intended to retrieve at the house.

Based upon the later dialogue between Defendant and the gunman, the jury was entitled to conclude that Defendant knew the shooter was armed. Moreover, Kindell testified to having stated, to everyone present, including Defendant, that one of the intruders carried a gun. Furthermore, the jury could easily have found that the gunman was reasonably certain his shots would cause the result—death of the victim. See State v. Meade, 942 S.W.2d 561, 564-65 (Tenn. Crim. App. 1996) (evidence sufficient for second degree murder where defendant shot one victim five or six times, including once execution-style); State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996) (evidence sufficient for second degree murder where defendant fired rifle approximately thirty-nine times into victim's vehicle while defendant knew vehicle was occupied); State v. Baxter, 938 S.W.2d 697, 701 (Tenn. Crim. App. 1996) (evidence sufficient for second degree murder where defendant stabbed victim in stomach, chased victim, rolled victim over, and stabbed him in chest holding knife with both hands); State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995) (evidence sufficient for second degree murder where defendant threatened victim and shortly thereafter shot him); State v. Maruja Paquita Coleman, No. 01C01-9401-CR-00029, 1997 WL 438169, at *3 (Tenn. Crim. App., Nashville, July 31, 1997) (evidence sufficient for second degree murder where defendant set fire to victim after victim had chased defendant and thrown pepper into her eyes).

Regarding criminal responsibility, in the crucial moments before the killing, Kindell, the only testifying eyewitness, stated that Defendant declared, "Pop go [sic] this weasel,"[1] turned, and walked out of the room past his companions. As

---

[1] Defendant points out that the transcription of Kindell's initial statement to police contains the statement, "Pop go [sic] the weasel." (Emphasis added.) Kindell testified at trial that Defendant actually said, "this weasel," and that her statement was incorrectly transcribed.

Defendant passed by, the gunman asked, "Do you want me to take him out?" Although Kindell did not hear what, if anything, Defendant said in response, the jury was within its purview to conclude either that Defendant gave an affirmative verbal response or that he in some other way communicated his assent to the shooting. In addition, the jury could have appropriately construed the term "Pop go [sic] this weasel" as an order or an announcement of the victim's fate. In that sense, the question "Do you want me to take him out?" served as verification of the direction. This issue lacks merit.

Next, Defendant challenges the sufficiency of the evidence to convict him of conspiracy to commit second degree murder. In this state,

> [t]he offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such an offense.

Tenn. Code Ann. § 39-12-103(a). Furthermore, "[n]o person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Id. § 39-12-103(d).

This Court has stated, "The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise." Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978). Based upon the foregoing discussion of statements made by Defendant and the gunman prior to the shooting, we conclude that the State presented

---

We find no distinction in language that is significant to our review.

-8-

sufficient evidence to permit a jury to find that Defendant and the gunman formed an agreement to commit a knowing killing. <u>Cf.</u> <u>State v. Randall Scott</u>, No. 01C01-9307-CR-00240, 1996 WL 4318, at *8 (Tenn. Crim. App., Nashville, Jan. 5, 1996) (stating that "[a]lthough there was no direct proof that the defendant and his codefendants agreed during that period of time to commit the kidnapping, that can be properly inferred from their acts"). In addition, commission of the killing by the shooter, a member of the agreement, satisfied the overt act required for conviction of conspiracy. This issue also lacks merit.

In conclusion, we affirm Defendant's convictions for second degree murder and conspiracy to commit second degree murder.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
THOMAS T. WOODALL, JUDGE